## AMERICAN GRAPHOPHONE CO. v. AMET.[1]

### (Circuit Court, N. D. Illinois. April 6, 1896.)

1. PATENTS FOR INVENTIONS—PATENTABILITY—COMBINATION—GRAPHOPHONE.
   Letters patent, No. 341,214, issued to Bell & Taintor, May 4, 1886, for an improvement in recording and reproducing speech and other sounds, consisting of the combination with a grooved tablet, or other body, having a sound record formed therein, of a reproducer having a rubbing style loosely mounted so that it is free to move laterally, and thus adjust itself to the groove, are not void for want of invention.

2. SAME—INFRINGEMENT.
   Such patent is infringed by a device in the essential characteristic of a loose joint, so as to enable the style to follow the groove of the record, and only used in connection with a sound record made by the patentee, since in the practical use of such device one of the elements of said patented combination is actually and necessarily employed.

3. SAME—ABANDONMENT—SALE OF PART OF COMBINATION.
   The sale of such sound records by the patentee, in the open market, apart from the rest of the machine, does not release that element of the patented combination from the monopoly of the patent.

In Equity.
Suit for injunction by the American Graphophone Company against Edward H. Amet.

Poole & Brown and Pollok & Mauro, for complainant.
Munday, Evarts & Adcock, for defendant.

GROSSCUP, District Judge. The bill is to restrain the infringement of letters patent No. 341,214, issued to Bell & Taintor, May 4, 1886, and also letters patent No. 341,288, issued to S. Taintor, of the same date. The first patent is for an improvement in recording and reproducing speech and other sounds; and the second, for an improvement in apparatus for recording and reproducing sounds, or sonorous vibrations. The defendant contests the validity of complainant's patents, and denies infringement.

Bell & Taintor lay no claim to having conceived the idea of a mechanism whereby speech or sound could be recorded and reproduced. Much thought and experimentation, before their patents were completed, were expended upon the general conception of such an instrument. But the fact remains that, prior to their graphophone, the conception of a phonograph had never been mechanically worked out to the extent of practical perfection. The graphophone, indeed, seems to have taken the place of all previous mechanisms, and to have advanced by a very large space, the art of recording and reproducing speech and sounds. All graphophones, or phonographs, are based upon the natural law that speech or sound impart to the surrounding air vibrations of a form and character exceptional to the peculiar

_____
[1] Petition for rehearing pending.

speech and sound. Such air vibrations, pressing upon a diaphragm, set it into vibrations, either bodily or molecularly, corresponding to the air vibrations. The same form of air vibrations will always produce the same form of diaphragm vibrations. Conversely, the same form of diaphragm vibrations will reproduce the same form of air vibrations. The form of diaphragm vibrations, therefore, which, through the medium of the air vibrations, are the result of a particular speech or sound, will themselves, when the operation is inverted, reproduce like speech and sound. It was not difficult, at the time of complainant's patent, to convert air vibrations into their corresponding diaphragm vibrations, or diaphragm vibrations into their corresponding air vibrations. That was practically the telephone. The problem presented was to deposit in some substance these diaphragm vibrations, where, at will, they might be taken up and imparted to another diaphragm, which would transform them into air vibrations. The chief mechanical problem before the inventors was the making of a suitable and practical substance of deposit or record. The complainants accomplished this by providing, as a substance for the record, a compound of beeswax and paraffine, slightly cohesive and amorphous. Upon this was traced, by means of a cutting style, connected with the sound-receiving diaphragm, and vibrated by it, grooves whose vertical undulations corresponded with the vibrations imparted. The style, cutting these grooves, removed all the material necessary to be displaced, and thus left the surface and density of the substance as it was before, except for the grooves. These grooves were cut with sloping walls, into which another style, corresponding with the first, would easily fit. This second style, resting upon these grooves by gravity, and being of the proper weight, doubtless ascertained by experimentation, and being moved along the grooves by mechanism provided for that purpose, imparted to a second diaphragm the vibrations incident to the elevations and depressions of the bottom of the groove. The effect of the whole is to give to the second diaphragm a series of vibrations so nearly like those of the first that the air waves thereby set in motion will correspond very nearly to the air waves which, in the first instance, set the producing diaphragm in motion. In the view I take of the case, it is unnecessary to go in detail into the other and subsidiary features of the mechanism, which were calculated simply to make it more effective. Claim 22 is as follows:

"The combination, with a grooved tablet, or other body, having a sound record formed therein, of a reproducer having a rubbing style loosely mounted, so that it is free to move laterally, and thus adjust itself to the groove, substantially as described."

And claim 24 is as follows:

"The combination, with a sound record formed in a wax, or a wax-like material, of a reproducer having a rubbing style for receiving sonorous vibrations from said record, substantially as described."

It will be seen that, in order to follow the groove accurately, the reproducer must be loosely mounted, and this is accomplished by

the universal joint described in the patent. Much stress was laid by counsel for complainants upon the patentability of the adaptation of this universal joint to the purpose of a graphophone. If the validity of the patent depended upon this contention, I would be disposed to hold against it, for I can see nothing novel about the joint, except its new use; and such adaptation to new use is not, in my judgment, patentable invention. But while this element, separately considered, is not invention, the combination which embraces it, in my judgment, is. Such combination is the mechanical means whereby the art of recording and reproducing speech and sounds is first made practically effective. To deny to it the dignity and quality of invention would be to deny the patentability of every first great mechanical success. The substance upon which the record is cut, and the reproducer thus loosely mounted, by which it is enabled to follow the undulations of the groove, together constitute an effective portion of the mechanism. Either, without the other, would be useless for the purpose of a graphophone or phonograph. Together they bring about a successful result. They therefore constitute a patentable combination. The defendant's device, in the essential characteristic of a loose joint, so as to enable the style to follow the groove of the record, is like the complainant's reproducer. It is intended to perform the function of imparting to a diaphragm the vibrations consequent upon the undulations in this groove. Without the complainant's record the defendant's device would be useless. It is never used except in connection with complainant's record. In the practical use, therefore, of defendant's device, one of the elements of complainant's combination is actually and necessarily employed.

It appears, however, that these records are sold by the complainant on the open market, and it is contended that such sale releases this element of the combination from the monopoly of the patent. I do not concur in this view. To make the graphophone more widely useful, the complainants make many records, embodying music, speech, and other sounds, and distribute these, by sale, to the users of the phone. But the record thus distributed remains an integral part of the combined mechanism. It is not a product of the machine, but still a part of it. It is not unusual, in many mechanisms, that some elements of their combination must be more frequently renewed than others. The sale of such parts, segregated from the machine, is only the replenishing of the combination by a substitution of a new element for the one worn out. Such action does not break the patentability of the combination. So, in this combination, substitution by sale of one or many records for another, though not due to the same necessity, ought to receive the same consideration. The keys of a piano may be replaced without releasing the combination of which the keys are an element from the monopoly of a patent. I can see no reason why the record of a graphophone may not, though for a different purpose, be likewise replaced without breaking the validity of the combination. Inasmuch, therefore, as defendant's device is only to be used in connection with one of the elements of complainant's patentable combination, I am of the opin-

ion that it infringes such combination as is expressed in claims 22 and 24, already quoted. A decree will therefore be entered for an injunction and accounting.

For decree, see 74 Fed. 1008.