AMERICAN GRAPHOPHONE CO. v. TALKING-MACHINE CO. et al.

(Circuit Court of Appeals, Seventh Circuit.   January 2, 1900.)

No. 618.

PATENTS—SUIT FOR INFRINGEMENT—PRELIMINARY INJUNCTION.

A complainant is not entitled to a preliminary injunction against infringement of a patent by defendant where the proofs establish prima facie that defendant is manufacturing the articles claimed to infringe under a license given by a contract made by the president of the complainant corporation, in making which he acted, as was supposed by defendant, and so far as shown by the proofs, in fact on behalf of complainant.

Appeal from the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

Philip Mauro, for appellant.

Howard W. Hayes and John W. Munday, for appellees.

Before WOODS, Circuit Judge, and BUNN and SEAMAN, District Judges.

SEAMAN, District Judge.   This appeal is from an order denying the complainant's motion for a preliminary injunction in a suit for infringement of letters patent No. 341,214, issued May 4, 1886, to Bell and Tainter, now owned by the complainant, for "an improvement in recording and reproducing speech and other sounds," being one form of the instrument known as the "graphophone."   The patent specifies 47 claims, which purport to cover both the mechanism for making the "sound record" and its product; and the alleged infringement consists in making duplicates of the product, but by a different means, except that the copy is made on the blank tablets manufactured by the complainant and its licensees for sale, sold in open market, and not covered by the patent in suit.   The action is founded on claims 7, 8, 10, 17, and 18, of which claim 7 is the broadest, and reads as follows:

"(7) A sound record, consisting of a tablet or other solid body, having its surface cut or engraved with narrow lines of irregular or varied form, corresponding to sound waves, substantially as described."

The validity of the patent has been sustained on various claims in several adjudications, of which the reported cases are: Graphophone Co. v. Amet (C. C.) 74 Fed. 789;  Same v. Walcutt (C. C.) 86 Fed. 468;  Same v. Leeds (C. C.) 87 Fed. 873,—and the bill avers that the claims in question were expressly sustained, and like infringement adjudged, in the Walcutt Case on final hearing.   On the other hand, the defendants contend that no issue was raised in either of the cases respecting the validity or application of these claims in the patent, that they are not, in terms, applicable to the duplication of sound records by other means not conflicting with that described in the patent, and that such use is expressly covered by a separate patent, No. 241,287, granted to the same patentees, of even date with the patent in suit, and not referred to in the bill.   The main contention, however, in the arguments upon this appeal relates to a special defense of license for the alleged infringement,—the ground

on which preliminary injunction appears to have been refused by the district judge; and, if the order is sustainable on that basis, it is unnecessary to consider, before final hearing, the fundamental inquiry as to the scope of these claims.

The affidavits and exhibits in the record show substantially the following facts: The complainant is the owner of several patents relating to graphophones and phonographs, including the patent in suit, and as such was extensively engaged in the manufacture and sale of such instruments in 1892, and before and since that year, with its headquarters at Washington, D. C.; but its devices for making duplicates of sound records were unsuccessful, and the company was seeking other means to that end. The principal defendant, Douglass, prior to 1892, had devised methods and constructed apparatus for the purpose, and was engaged in making duplicate sound records, at Chicago, which were sold to and through the Chicago Central Phonograph Company, a licensee of the complainant, of which Douglass was superintendent; and he also claims to have sold them to the complainant. E. D. Easton was then "director of agencies" and one of the directors of the complainant, and subsequently became its president. On March 3, 1892, Easton called upon Douglass, in Chicago, in reference to the means so devised, which the latter held as a secret, and refused to divulge, and the meeting resulted in the acceptance by Douglass of an invitation to visit Washington for negotiations, where he made samples of his records, which were exhibited to the directors of complainant. On March 14, 1892, an agreement in writing was made between Douglass and Easton, providing for transfer to Easton of the process, in consideration, besides other matters, of certain royalties to be paid to Douglass; and Douglass was to make improvements, aid in procuring patents to be assigned to Easton, and meantime not to communicate the process to others. Provision was also made to execute further agreements to carry out such purposes. Subsequently this agreement was made more specific in a writing between the same parties, bearing date March 16, 1892; and another agreement, with like provisions, which was prepared by Easton, and is stated to have been signed at the same time, although bearing date March 17, 1892, was executed between Douglass and the complainant, whereby the invention of the former and the desire of the company to use his process are recited, and Douglass agrees, for substantially the same considerations named in the Easton contract, to disclose his method to the president and to the directors of agencies, and procure the apparatus therefor at the expense of the complainant. Thereupon Douglass entered the service of the complainant in Washington, and so remained until his return to Chicago, in July, and subsequently there were other contract relations between them from time to time, of which the details do not appear. Application for a patent for the Douglass process was made in accordance with the agreements, and letters patent No. 475,490 were issued to him May 24, 1892, but it is asserted that the process thus described was not successful. Improvements were afterwards made by Douglass, as contemplated by the agreement, were furnished to Easton, and are

alleged to have been employed by the complainant, to have proved successful, and to constitute the devices used in making the alleged infringement. When these improvements were thus turned over, Easton was president and general manager of the complainant, and Douglass claims that it was his understanding that Easton represented the company in all the transactions, and especially on this occasion, and that Easton stated their wish to enter more extensively into the manufacture of duplicates, and suggested an arrangement for the waiver of royalties by Douglass on the granting to him of a permanent license for like manufacture and sale; that this proposal was satisfactory to Douglass, and Easton agreed to send him an agreement to that effect, and sent by mail the following letter as such modification:

"Jan. 3rd, 1895.

"Mr. Leon F. Douglass, No. 98 Madison St., Chicago, Ills.—Dear Sir: Referring to the contract of March 16th, 1892, this is to evidence a modification of said contract as follows: Application is now pending for a patent for an improvement in your process for duplicating, and you have assigned the same to me before issue. You are hereby licensed under the patent already issued, and are authorized to use the process covered by the pending application in such way, personally, as you please, the consideration to me being a waiver of the royalty of two cents per cylinder specified in your contract with me of March 16th, 1892. It is understood that this is a personal license; that it is not assignable, nor salable; but that you may make, for sale, as many phonograph records as you please under this license. The above is not intended to in any way modify or affect any agreement you may have with the American Graphophone Company.

"Yours, truly,                               E. D. Easton."

On this final arrangement the defendant Douglass entered into the manufacture of duplicates, the other defendants being employés; and it is manifest that the defense of license is clearly presented, and even established prima facie, if the action and agreement of Easton is attributable to the complainant. The concluding clause in the agreement, that it is not intended to "modify or affect any agreement you may have with the American Graphophone Company," is explained by undisputed testimony as referring to collateral contracts not involved in this controversy, and so conceded by the affidavit of Easton, although counsel for the complainant do not recognize this distinction in their argument. No satisfactory explanation appears for making independent contracts, one with Easton individually and the other with his company, each with like provisions, which necessarily conflict unless treated as identical in purpose; and in the face of the relations existing between Easton and the complainant, and of the evident understanding on the part of Douglass that Easton acted on behalf of his company throughout, it cannot be presumed, from the mere separate form of the contracts, that the transactions were independent and antagonistic. If facts existed and entered into the understanding of the parties on which the agreements may be so construed, they do not appear in this record, and any issue thereupon must be left for determination at final hearing. A fundamental requisite is wanting, therefore, to establish the right to a preliminary injunction, and the motion was properly denied. The order of the circuit court is affirmed, with costs.