## Case No. 1,243.

### BELDING et al. v. TURNER.

[8 Blatchf. 321; 4 Fish. Pat. Cas. 446.] [1]

Circuit Court, D. Connecticut. April 20, 1871.

PATENTS FOR INVENTIONS —LICENSE TO PARTNERSHIP—INJUNCTION FOR INFRINGEMENT.

A. licensed the firm of H. & Co., of New Jersey, for the sum of one thousand dollars, to use a patented invention "for the purpose of manufacturing a quantity of silk, not exceeding one hundred pounds per week," during the term of the letters patent. The firm of H. & Co., which consisted of two members, H. & L., was subsequently dissolved, L. assigning all her interest to H. H. subsequently transported the machine to the works of the defendant, in Connecticut, where he used it, under an agreement with him, in the manufacture of the quantity of silk named in the license. The owners of the patent having moved to enjoin the use of the machine, under these circumstances, an injunction was refused.

[Cited in Montross v. Mabie, 30 Fed. 238.]
[See note at end of case.]

[In equity. Motion by Milo M. Belding and others for a provisional injunction to restrain Phineas W. Turner from infringing letters patent No. 42,153, granted April 5; 1864, to Goodrich Holland and J. E. Atwood, for an "improvement in the manufacture of sewing silk." Denied.]

Charles E. Perkins, for plaintiffs.
Alvin P. Hyde, for defendant.

SHIPMAN, District Judge. This is a motion for a preliminary injunction, founded upon an ordinary bill in equity, seeking to restrain an alleged infringement of the plaintiffs' patent, and to obtain an account, together with accompanying affidavits. That the device covered by the plaintiffs' patent is in use in the defendant's manufacturing establishment, with his consent, is not denied. He seeks to justify that use by the following facts:

On the 3d of February, 1866, the then owners of the patent in question executed a written instrument under seal, which, after reciting the issue of the patent to the inventors thereof, and that "Messrs. Howarth & Co., of Hoboken, state of New Jersey, are desirous of acquiring a license to use said invention to a limited extent," proceeds as follows: "Now this indenture witnesseth, that, for and in consideration of the sum of one thousand dollars to us in hand paid, the receipt of

[1] [Reported by Hon. Samuel Blatchford, District Judge. and Samuel S. Fisher, Esq., and here compiled and reprinted by permission. Syllabus taken from Fish. Pat. Cas., and opinion from Blatchf.]

which is hereby acknowledged, we hereby grant unto the said Howarth & Co. the right to use the aforesaid invention for the purpose of manufacturing a quantity of silk, not exceeding one hundred (100) pounds per week, during the term for which said letters patent are granted." At the time this instrument was executed, the firm of Howarth & Co. consisted of Horatio Howarth and Ann E. Leigh. On the 3d of September, 1867, the firm of Howarth & Co. was dissolved by mutual consent, Leigh assigning all her interest in the assets of the firm, of every kind, to Howarth, and the latter paying a consideration therefor, and also assuming all the debts and liabilities of the firm. On the 27th of March, 1869, Howarth entered into an arrangement with the defendant, by which the former agreed to transport the machine used for the manufacture of silk under the license, to the manufacturing establishment of the defendant, in Hebron, Connecticut, where it was to be run by Howarth, in the manufacture of the quantity of silk named in the license, the defendant to furnish water-power, pay certain expenses, and a prescribed tariff, and comply with certain other conditions not necessary to mention. The question now is, whether the use of the machine under these circumstances should be arrested on this motion.

The plaintiffs contend, that, as the license is not in terms assignable, it conferred a personal privilege only, and that upon Howarth & Co. They insist, that the dissolution of the firm and the withdrawal of Leigh extinguished the license. A court of equity would give such an interpretation to this instrument only when compelled to do so by the unbending and imperative rules of construction. In the first place, it is entirely obvious, that it was of no importance to the licensers whether the privilege granted by them should enure to the benefit of a firm consisting of two or more persons, or should be enjoyed by one only. The privilege granted was specific—to use the invention to the extent of manufacturing one hundred pounds of silk per week during the life of the patent. For this the licensers received a given sum in advance, covering the whole period of time. The license contains no limitation of time or place, but only of quantity.

But it is said that there is an implied limitation to persons—that the privilege can only be enjoyed by Howarth & Co., as the grant was to them only. This is a very narrow interpretation, by which the construction of the instrument is made to hinge on a name. By such a construction, the privilege would not have been defeated had new partners been admitted to the firm, provided the name had remained unchanged. Nor would the withdrawal of one of the two partners composing the firm at the time the license was granted, have had such an effect, provided the remaining member had chosen to carry on the business under the old name of Howarth & Co. For, it will be noticed, that the instrument does not prescribe or limit the number of partners which shall compose the firm of Howarth & Co., by setting out their individual names. The instrument, therefore, furnishes no evidence that the grantors intended that the privilege conferred by the license should be enjoyed by the exact number and identical persons of which the firm of Howarth & Co. was then composed. There was nothing in the nature of the privilege to lead the owners of the patent to call for, or contemplate, such a precise and rigid limitation of the grant. They knew perfectly well, in view of the instability of human affairs, that this firm might be changed or dissolved in a short time, and yet they took a consideration coextensive with the whole life of the patent, which they still retain; and one of them is a party plaintiff to this bill. He, at least, is seeking to deprive a party of a privilege for which he undoubtedly paid a full consideration.

There is no pretence that Howarth is using the invention in any manner not warranted by the license, except what grows out of the fact that his co-partner has withdrawn from the firm and relinquished to him all her rights therein. As at present advised, I do not think that this fact operates to deprive him of all rights under this license. At all events, I entertain sufficient doubts of the validity of the plaintiffs' claim to lead me to deny this motion for a preliminary injunction.

[NOTE. The rule respecting licenses generally, that they are founded in personal confidence, and are not assignable, (3 Kent, Comm. 452,) is closely analogous to the doctrine of the nonassignability of a license to use a patented invention, and, perhaps, has been an influence of more or less potency in shaping the lines of its development. It is worthy of note, however, that the principles enunciated in some of the decisions seem to have more particular relation to the legal character of the original patent grant by the crown.

[The exclusive right to an invention can only have existence by virtue of some positive law, and in England this right has been regarded a personal privilege, inalienable unless power to that effect is given by the crown. This privilege, as such, is a mere naked right, inseparable from the person of the grantee; but in practice it is made assignable by the grant, and is then defined as an incorporeal chattel, which the patent impresses with all the characteristics of personal estate, by limiting it to the grantee, his executors, administrators, and assigns. Duvergier v. Fellows, 10 Barn. & C. 829; Power v. Walker, 3 Maule & S. 9. This same purpose found expression in the first patent act passed by the congress of the United States in 1790, (Act April 10, 1790; 1 Stat. 110, § 1,) the subsequent acts, and also in the Revised Statutes, (section 4884,) which made the grant to the patentee his "heirs or assigns." Statutory provision has been made for the recording of assignments of patents, (Rev. St. § 4898,) but no reference is made in the acts to the assignment of licenses.

[The rule was early established that a mere license to a party, without mentioning his assigns, is a grant of power, or a dispensation with a right or a remedy, and confers a personal

right upon the licensee, which is not transmissible to another person. Brooks v. Byam, Case No. 1,948; Troy Iron & Nail Factory v. Corning, 14 How. (55 U. S.) 193; Curt. Pat. § 213. Further justification is found for the rule in the fact that licenses are usually granted to such individuals as the grantor may select because of their personal ability or qualifications to carry out the purpose of the license; and such a license is not assignable, although granted for a term of years. Oliver v. Rumford Chemical Works, 109 U. S. 75, 3 Sup. Ct. 61. See, also, Thomson v. Citizens' Nat. Bank, 3 C. C. A. 518, 53 Fed. 250; Hayward v. Andrews, 106 U. S. 672, 1 Sup. Ct. Rep. 544; Holmes Burglar Alarm Tel. Co. v. Domestic Tel. & Tel. Co., 42 Fed. 220; Walk. Pat. § 310; Searls v. Bouton, 12 Fed. 140; Baldwin v. Sibley, Case No. 805. A license does not authorize the granting of sublicenses. Putnam v. Hollender, 6 Fed. 882.

[The rule has been enforced with some strictness; e. g. a license held by a corporation is determined upon the dissolution of the corporation, and cannot pass to another corporation formed by the same parties under the laws of another state. Hapgood v. Hewitt, 119 U. S. 226, 7 Sup. Ct. 193. A license will not pass to a receiver appointed by the court, (Curran v. Craig, 22 Fed. 101; Waterman v. Shipman, 5 C. C. A. 371, 55 Fed. 982;) but, where goods manufactured under a license are on hand at the time of the appointment of the receiver, the license will be construed so as to authorize the sale of such goods, (Montross v. Mabie, 30 Fed. 234.)

[A license to a partnership confers no right upon a corporation subsequently organized by the partners. who became its sole shareholders, except 30 shares reserved for sale to employes. Locke v. Lane & Bodley Co., 35 Fed. 289. But it seems that licenses to two corporations will pass to another corporation formed by their consolidation. Lightner v. Boston & A. R. Co., Case No. 8,343. This case was decided in 1869, and rests upon the theory that the gist of the license contract, which was for the use of an axle box on railway cars, was an unlimited use on the two roads between given points, (a purpose best subserved by the continued use by the consolidated corporation,) and the fact that the two old corporations were not dissolved, but were continued for certain purposes. No authorities were cited.

[The principal case, holding that a surviving partner is entitled to a license granted to the old firm, is in a measure based upon the fact that the consideration for the license was the lump sum of $1,000, which should inure to the benefit of the surviving partner, as one of the parties to the original contract.

[Concerning licenses generally, see Ricker v. Kelly. 10 Am. Dec. 40, note; Cowles v. Kidder, 24 N. H. 364; Mumford v. Whitney, 15 Wend. 380.]