## Montross v. Mabie.

(*Circuit Court, S. D. New York.*    March 21, 1887.)

1. PATENTS FOR INVENTIONS—COPARTNERS—DISSOLUTION—IMPLIED LICENSE.
    The extent of an implied license to make and sell patented articles is to be construed according to the presumed intent of the parties, as inferred from the circumstances.

2. SAME—RECEIVER'S RIGHT TO SELL—INJUNCTION.
    A firm having been largely engaged during several years in manufacturing and selling stoves upon designs patented by one of the partners, and accounts between them having been repeatedly settled embracing such sales, and the profits thereon, as firm business, *held,* without regard to the question whether the patent was equitably the exclusive property of the patentee, (1) that a license by the patentee to the firm to make the stoves and to sell those manufactured was implied; (2) that such license, by necessary implication, was co-extensive with the business of the firm, and continued until the copartnership affairs were wound up by any lawful agencies for that purpose; (3) that, consequently, the copartner of the patentee had the same authority after dissolution as before to sell for the benefit of the firm the stoves manufactured for sale before dissolution; and (4) that a receiver of the partnership effects, appointed by a state court in a suit brought for winding up the affairs of the partnership, had a similar authority to sell the stoves remaining on hand, both as the representative of the parties, and as a lawful agency for closing up the partnership business, and was by necessary implication included in the implied license; an application for an injunction to restrain him from selling was therefore refused.

On motion for Injunction.

*E. N. Dickerson, Jr.,* for complainant.

*Clarence H. Frost* and *Geo. F. Betts,* for defendant.

BROWN, J.   In a suit brought in the state court for winding up the copartnership of Montross & Lent, of which the complainant was a member, the defendant in February last was appointed receiver of the partnership effects.   Among the assets that came into his hands are stoves of various patterns, manufactured in the ordinary course of the firm business under patents issued, during the continuance of the partnership, to the plaintiff individually; and also patterns, moulds, and dies used in the manufacture.   The copartnership, with some changes in its members, had existed for many years, and a large quantity of stoves under the complainant's patents had been manufactured and sold by the firm in the ordinary course of its business, for the benefit of the firm; and its accounts had been at various times adjusted and settled between the copartners, including the manufacture and sale of similar stoves. The stoves that have come into the hands of the receiver were manufactured during the copartnership, and are those only which remained undisposed of at the dissolution of the firm.   The plaintiff seeks to enjoin the defendant from selling these stoves, and the dies, patterns, etc., upon the ground that the plaintiff is the sole owner of the patents under which the stoves were made; and that whatever license might be implied in favor of the firm, or of the copartner, Lent, to make and sell the stoves during the continuance of the firm, such license was a purely

personal one; that the license to make and to sell are distinct, substantive rights, and that any implied license either to make or to sell was determined instantly upon the dissolution of the firm; and that the receiver, therefore, acquired no authority to sell, and cannot do so without infringement of the complainant's patent-rights.

It is not disputed by the plaintiff that a license to the firm of Montross & Lent is to be legally inferred from the circumstances, "to manufacture the patented articles, and to sell such of them as were sold during the existence of the firm." The facts and the circumstances, including the conduct and acts of both parties during a long series of years, are such as to leave no question of a license to that extent. See *Hapgood* v. *Hewitt*, 119 U. S. 226, 232, 7 Sup. Ct. Rep. 193; *Wade* v. *Metcalf*, 16 Fed. Rep. 132; *American Tube-works* v. *Bridgewater Iron Co.*, 26 Fed. Rep. 334; *Herman* v. *Herman*, 29 Fed. Rep. 92.

In *Adams* v. *Burke*, 17 Wall. 453, 456, Mr. Justice MILLER says:

"The right to sell and the right to use are each substantive rights, and may be granted or conferred separately by the patentee. But in the essential nature of things, when the patentee, or the person having his rights, *sells* a machine or instrument whose sole value is in its *use*, he receives the consideration for its use, and he parts with the right to restrict that use."

All the stoves manufactured by this firm were made for the purpose of *sale*, and not for *use* by the firm. The same facts, therefore, that warrant and necessitate in this case the inference of a license to manufacture, necessarily include the right to sell as well as to make, as that was the only purpose and interest of the firm in their manufacture. Following the language of Mr. Justice MILLER above quoted, the sole value of the license and of the stoves to the firm in this case was the right to sell them. The license implied here was undoubtedly a license to make and to sell.

I see no just reason for holding the license to sell, implied under such circumstances, to be ended at the moment of the dissolution of the firm. The language of the circuit judge in *Hapgood* v. *Hewitt, supra*, and approved by the supreme court, that "the right, being a mere personal one, was not transferable, and was extinguished by the dissolution of the corporation," must be interpreted in reference to the facts of that case, which had reference only to new goods, made by an independent corporation after the dissolution of the former corporation.

The implied license that is inferred from the acts and dealings of the parties is in the nature of an estoppel to prevent what would otherwise be a gross injustice, if not fraud. Every reason that exists for inferring a license to sell before dissolution the stoves that were made by the firm for the purpose of sale, applies equally in favor of a license to sell after dissolution such stoves as then remained unsold, for the purpose of winding up the concern. As respects the right of the copartner Lent, I know of no principle of law that would make his right to sell after dissolution any less than before. A partnership, and the rights of partners, are not ended by dissolution. A dissolution, as Kent observes, (3 Kent, Comm. *63,) is "in some respects prospective only." While

neither party can bind the other by new contracts, both have the same right as before to sell the partnership effects for the purposes of settlement and distribution. "A dissolution," says DENIO, J., in *Robbins* v. *Fuller*, 24 N. Y. 570, "though it annulled the powers of the respective partners for many purposes, * * * did not put an end to their authority to administer the assets in accordance with the rights and interests of the parties interested in them, and with the intention of the partnership enterprise. For this purpose the partnership is considered as continuing." For that purpose, say the court in *Murray* v. *Mumford*, 6 Cow. 441, "the partnership may be said still to continue, with all the incidents belonging to that relation."

It is evident, therefore, that Lent, as one of the partners, had an equal right with the complainant to sell the stoves on hand after the dissolution as much as before. That right still exists in him, except in so far as it is abridged by the appointment of the defendant as receiver in the action pending between the parties in the state court. The receiver in such a case is but the arm of the court to carry out and perform what the court adjudges ought to be performed as between the parties to the cause. So long as one of the parties has a legal right to sell the patented article, or have it sold for the firm's benefit, the court, having jurisdiction of the parties and of the subject-matter, must have the power, through its receiver, to do what either of the parties have the right to have done. In substance and in effect, the sale in such a case is through an agency and an authority invoked by a party who has a right to sell, and who asks the aid of the court for that purpose. The general rule that a mere naked license is not transferable seems to me to have no application to such a case; because the receiver sells for the benefit of the licensees themselves, not for the use and benefit of others. These stoves, to the value of about $16,000, are lawfully in the receiver's hands, to be sold for the benefit of the firm, who were licensed to sell them, and whose right to sell them, or to have them sold, exists still, notwithstanding the dissolution. If they cannot be sold by the receiver, they cannot be sold by any one; since his authority, for the time being, stands in lieu of that of the parties themselves. It would be an opprobrium upon the law, and a gross incongruity, to hold that the court could not effect, through its receiver, upon a disagreement of the parties, a sale that either of the parties is authorized to make; or that the complainant, from mere obstinacy or caprice, might legally insist that the firm property that he had licensed to be made and sold for the firm's benefit should be broken up into old iron, instead of being devoted to the uses of the firm; and it would be a strange perversion of equity to sustain such a purpose by injunction.

Again, there is no reason for treating the implied license in this case as a mere personal privilege, to be exercised by the partners in person alone. The extent of a license is such as the contract of the parties makes it. *Black* v. *Hubbard*, 3 Ban. & A. 39; *Lightner* v. *Boston & A. R. Co.*, 1 Low. 338. If made to the licensee "and assigns," it is transferable without limit. The license may, indeed, be made expressly

to an individual, to be used by himself alone, and not through agents or employes. The extent of the license is a question of construction, and, as in the case of other contracts expressed or implied, is to be determined in accordance with the intention of the parties. A license to a man engaged in business to make and sell a patented article in his business generally, unless there were something else to restrict it, would manifestly be co-extensive with his business, and would continue till his business was wound up. The licensee in such a case is not restricted to manufacturing with his own hands, or selling by his own personal efforts only. He may employ as many hands and as many salesmen and agents as his business will admit. So long as the articles are made and are sold in his business, and for his use and benefit, the sale would be within the license, though effected by the hands of hundreds of different agents and employes.

The license necessarily implied from the circumstances in this case is a license to manufacture during the continuance of the firm, and to sell all the manufactured articles for the benefit of the firm until it is legally wound up, after dissolution as much as before, and by any agency that may be legally invoked in order to wind up the business. The license must be construed as so intended, because any other construction would be unreasonable and ruinous. A sale by a receiver of the stoves lawfully manufactured for the purposes of sale during the continuance of the partnership is by necessary implication a part of the license to the firm to manufacture and sell; because the receivership is a lawful agency for the sale of the firm assets for the benefit of the firm, as much so as that of a salesman appointed by the parties themselves to effect the same object, either during the partnership, or after its dissolution.

Substantially the same question is presented upon the insolvency or death of one who had been licensed by the patentee to make and sell the patented article, as respects the right of the executor, administrator, or assignee in insolvency, as the case may be, to sell the goods remaining on hand at the time of the licensee's death or insolvency. If the license was not to assigns, it is settled that no new goods could be made under the license by the assignee or personal representatives of the licensee, though the term of the license had not expired. *Oliver* v. *Rumford Chem. Works,* 109 U. S. 75, 83, 3 Sup. Ct. Rep. 61; *Curran* v. *Craig,* 22 Fed. Rep. 101. But though this situation, as respects goods on hand, must have arisen often, no case has been cited, nor have I found any, in which it has been denied, or any doubt intimated, that the assignee or executor might lawfully sell the patented articles that had been lawfully made for sale under the license. This is no slight negative evidence of the practical interpretation, at least, of the intent of such a license. Were the rule of law otherwise, since death may happen at any moment, no one could venture to do business under such a license, except at the peril, in case of death, of the loss, it might be, of all his capital. If the license were in writing, a provision might doubtless be inserted providing for the winding up of the business by personal representatives, or an assignee, though no general transfer "to assigns"

was intended. Such a special provision, however, would hardly be expected; and in my judgment it is not necessary, because fairly contained by necessary implication in the license to make and sell. As respects the construction of the extent of the license in particular cases, see *Belding* v. *Turner*, 8 Blatchf. 321; *Lightner* v. *Boston & A. R. Co.*, 1 Low. 338.

A further ground for holding that the complainant's license extended to a sale after dissolution is found in the articles of copartnership, which contain a provision that either partner upon dissolution may acquire the firm property upon an offer and acceptance of some sum to be named. This necessarily implies that any such stoves remaining on hand at the time of dissolution are a subject of sale to or by either partner alike, and hence it imports a license to Lent to acquire the property individually, for the purposes of general sale, and is therefore practically equivalent to a license to Lent or his assigns. *Wade* v. *Metcalf*, 16 Fed. Rep. 130. This part of the motion must therefore be denied.

As respects the patterns, etc., inasmuch as these would be of no use, or of trifling value, except for the further manufacture of stoves, the right to sell them, with the right to manufacture stoves, would depend upon the equitable right of Mr. Lent to a partnership in the complainant's patents. But as I am not able at present to examine that branch of the motion, and there is urgent need for an immediate decision as respects the stoves, I decide only to relieve the defendant from the stipulation made by him in this cause on the fourth of March, 1887, so far as respects the stoves, and to continue the stipulation in full force and effect for 30 days from this date, as respects the other articles except stoves; and that the motion as respects the patterns, etc., retain its place on the motion calendar for further hearing.