EDISON ELECTRIC LIGHT CO. et al. v. PENINSULAR LIGHT, POWER & HEAT CO. et al.

(Circuit Court, W. D. Michigan, S. D.   June 13, 1899.)

1. PATENTS—CONTRIBUTORY INFRINGEMENT—ELECTRICITY.

The vendor of an article of common merchandise, having no special adaptation to an infringing use, but equally adapted to a lawful and proper method of use, is not responsible, as a contributory infringer, for an unlawful method of use by the vendee, when he knows that the vendee intends such unlawful use, but has no interest in, and makes no stipulation for, the employment of such method. Therefore a company engaged in generating electricity, which is conducts to the borders of a city, and there sells to another company, which furnishes it directly to consumers, is not

liable merely because it knows that the distributing company will furnish some of the electricity to a party employing a method of use which infringes a patent. Neither is the distributing company liable where it has no interest in, and makes no stipulation for, the employment of such infringing method of use by its vendee.

**2. SAME—CONSTRUCTION OF LICENSE.**

A license to use a patented thing, in the absence of circumstances controlling the presumption, implies a license to make the thing to be used.

**3. SAME.**

An electric company, which grants a license to a local company to produce and distribute electricity for use in the locality, thereby impliedly licenses the use of all methods and apparatus covered by its patents which are necessary to make the use of such electricity available to the public. Hence where the local distributing company, though not organized for the purpose of installing electrical apparatus to be used by its customers, yet, in the absence of other parties capable of putting in such apparatus, undertakes to do so merely at cost, and in fact receives only the actual expense thereof, this fact does not prevent a customer from acquiring an implied license to use the apparatus so installed.

**4. SAME—DURATION OF LICENSE.**

A license to use a thing which one is authorized to make imports, in the absence of controlling circumstances, a license to use it during the full-term of the patent. If any restriction is intended, a stipulation therefor should be inserted in the contract. Hence, where a user of electricity acquires from the company furnishing such electricity a license to use a certain method or apparatus for employing the same in electric lighting, and purchases from the company the apparatus itself, it does not, in the absence of any stipulation to that effect, lose its right to employ such method or apparatus when its licensor ceases to furnish electricity to it, and therefore does not become an infringer by continuing to employ such method or apparatus in utilizing electricity furnished by another party.

**5. SAME—RIGHTS OF PURCHASER.**

The sale and installation of an electric wire and lighting system in a building carries with it the right to use any subsidiary and co-operating elements necessary to the proper use of such system, such as transformers for reducing the voltage, without which the system cannot be advantageously and economically used.

In Equity. On final hearing.

Bundy & Travis, for complainants.
More & Wilson, for defendants.

SEVERENS, District Judge. This is a suit in equity brought by the Edison Electric Light Company, a corporation organized under the laws of New York, and the Edison Light Company of Grand Rapids, a corporation organized under the laws of Michigan, and doing business at the city of Grand Rapids, against the Lowell Water & Light Company, doing business at Vergennes, Mich., and the Peninsular Light, Power & Heat Company, doing business at Grand Rapids, both of which last-named corporations are organized under the laws of Michigan. The first named of the complainants sues as the owner of patents Nos. 274,290 and 287,516, issued to Thomas A. Edison. The other complainant is licensee for the use of the inventions covered by those patents in the city of Grand Rapids. The first named of the defendants is engaged at Vergennes in the generation of electrical current, which it transmits to the limits of the city of Grand Rapids, and there sells to the other defendant, who sells and distributes it to the people of the city of

Grand Rapids. The complaint is that the defendants infringe the rights secured by the above-mentioned patents, but the matter in controversy, as restricted by the briefs, is whether the defendants infringe by supplying the electrical current to the Livingston Hotel, in the city of Grand Rapids, wherein, it is said, is maintained an electrical apparatus for the production of light, in violation of the complainants' patents. There is little dispute in regard to the facts, though upon one subject they are somewhat obscure, as will be shown later on.

Counsel for complainants states the original facts in the following language:

"The complainant Edison Electric Light Company was organized in 1886, acquired the legal title to a large number of patents granted to Thomas A. Edison and others, and immediately entered upon the business of exploiting the inventions in the electric art secured by those patents. The business scheme contemplated by that concern, and afterward carried into effect, was to provide for the establishment of local central-station plants, operated by local companies, which, under a license from the parent company to use its patented inventions, should install systems of lighting in the various municipalities throughout the country. In pursuance of this scheme, Edison lighting companies were organized in almost every city of importance in the United States, each establishing a central station, equipped with electrical apparatus for the generation of electric current. Among these local companies was the complainant Edison Light Company of Grand Rapids (then known as the 'Grand Rapids Edison Light & Fuel Gas Company'). This concern, organized under the Michigan law, erected in the city of Grand Rapids a central station equipped with engines, dynamos, etc., and forthwith entered upon the business of supplying electric current to the city of Grand Rapids for illuminating and other purposes, employing the arrangement of apparatus known as the 'Edison three-wire system,' covered by patent No. 274,290, in suit. The business scheme contemplated by the Grand Rapids Company was not to manufacture and install apparatus outside of its own central station, but merely to generate current, and supply it to consumers, for use in apparatus installed by other persons or concerns. There were at this time, however, in the city of Grand Rapids, at least, no construction companies carrying on the business of running electric wires in buildings; and it therefore became necessary for the Grand Rapids Company, in its effort to introduce lighting by electricity, to wire certain of the buildings in which this type of illumination was desired. Since, however, it was proposed by that concern to earn its profit, not from such wiring, but by the supply of current thereto, such wiring as it did was put in at a cost of labor and materials."

This statement is substantially correct, so far as it goes, but I am satisfied that patent No. 287,516 was also concurrently employed.

Among the buildings into which the Grand Rapids Company introduced the patented apparatus was the Livingston Hotel. The company made a contract with the proprietors of the hotel in 1888 for supplying it with electricity, whereby it should be lighted; and at the same time, while the building was in the course of erection, the Grand Rapids Company, under contract with the owners of the hotel, put in the apparatus, the most of it within the walls, behind the lath and plastering, and through partitions. The Livingston Hotel continued to be supplied with the current by the Grand Rapids Company, and used the apparatus so put up, until the fall of 1894, when the proprietors of the hotel ceased to use the current from the Edison Light Company of Grand Rapids, and set up a dynamo of their own on the hotel premises, together with a steam

engine to operate it. The dynamo was connected with the house-wiring apparatus put in by the Grand Rapids Company, as above stated, and from that time until February, 1896, the proprietors of the hotel supplied and used their own current. At the last-named date (February, 1896) the Livingston Hotel people discontinued the use of their own dynamo, and from that date until the present the hotel has been supplied with current by the defendant the Peninsular Company, which, as above stated, takes the electrical current, for general distribution to the people of the city, at a place near the limits of the city, under contract made between it and the Lowell Company. Ever since the electrical apparatus was put into the Livingston Hotel by the Edison Light Company of Grand Rapids, the apparatus has been continued in use, except that from February to October, 1896, there was some modification in the system of lighting, which will be hereafter noticed. But this modification not operating satisfactorily, the use of the three-wire system in the hotel was thereafter continued without the modification just mentioned.

The substance of the complaint is that the Livingston Hotel people are using the system of the Edison patents for the purpose of lighting the hotel, notwithstanding the contract between the Grand Rapids Company and the owners of the Livingston Hotel has long since expired; it being claimed that the owners of the hotel had the privilege of using the patented apparatus only during such a period as it should continue to take its current from the Grand Rapids Company under contract with that company. On behalf of the owners of the Livingston Hotel, it is claimed by the defendants, or one of them, that the installation of the patented apparatus for a price paid therefor, while the hotel was being built, was, in substance and effect, a sale of the apparatus, which carried with it a release from the monopoly of the patent, and authorized its free use thereafter. The two defendants are charged with contributing to the infringement of the complainants' patents by the Livingston Hotel people. The latter are not made defendants to the suit, and it seems an anomalous constitution of the case that the party principally interested in the subject of the controversy is entirely omitted from the parties set up for the litigation. The theory on which this making up of the parties is supported evidently is that all parties guilty of infringement are tort feasors, and the complainant may sue whom he will, all of which would be consistent with the principles which obtain in courts of law. But it certainly is not a convenient one to be pursued in equity courts, where the leading rule in respect of parties is to bring in those who are interested in the decree. Under the operation of that rule, the owners of the Livingston Hotel should have been made defendants in the suit, so that they could have the opportunity of defending their own rights, instead of being obliged to leave the contest to others. But without deciding whether this ought to have been done, there having been no question of this sort raised in the progress of the case, I shall proceed to determine it without reference to that feature. It is obvious, however, that the defendants may justify under the right of the owners of the Livingston Hotel, if the latter have such

right as is claimed for them, and the defendants, in so far as they justify under that right, must stand or fall upon the test whether the installation of the apparatus by the Grand Rapids Company in the hotel for a price paid therefor operated as a purchase of that apparatus, and gave to the owners of the hotel, who thus became the owners of the apparatus, the right to use it thereafter for the purposes for which it was designed and to which it is adapted.

Another question, however, is involved in reference to the position of the Lowell Company, and the case as made against it may be conveniently considered at this point. The contention on the part of the complainants is that the Lowell Company, by furnishing the current to the Peninsular Company, which in turn furnishes it to the Livingston Hotel to be there used in infringing apparatus, is a joint contributor with the Peninsular Company to the alleged unlawful use of the apparatus in the hotel. The facts upon which this contention turns have been already stated. They are, shortly, that the Lowell Company sells the current which it generates to the Peninsular Company, which in turn distributes it to its customers in the city of Grand Rapids, among the rest to the Livingston Hotel. It is not alleged or claimed that there is any specific agreement, or that it is any part of the contract between the Lowell Company and the Peninsular Company that the latter shall furnish to the Livingston Hotel the current which the Lowell Company sells, and there is nothing in the case to distinguish it from the case of sale of ordinary merchandise to a purchaser, who will, as the vendor expects, sell it to others, who may or will make use of it in violating the rights of others. That which is sold by the Lowell Company has no particular adaptation for use in the Edison system, but is equally adapted to any and all means of electrical distribution and use. The doctrine of contributory infringement has never been applied to a case where the thing alleged to be contributed is one of general use, suitable to a great variety of other methods of use, and especially where there is no agreement or definite purpose that the thing sold shall be employed with other things so as to infringe a patent right. The cases which are cited (Thomson-Houston Electric Co. v. Kelsey Electric Ry. Specialty Co., 72 Fed. 1016; Heaton-Peninsular Button-Fastener Co. v. Eureka Specialty Co., 25 C. C. A. 267, 77 Fed. 297) do not support the position taken; for in those cases not only was the thing furnished peculiarly adapted to the infringing use, but the court found, as matter of fact, that there was a wrongful purpose on the part of the contributing defendant that the article supplied should be so used. These are the characteristics of a case for making one liable as a contributory infringer. My conclusion upon this branch of the case is that, as to the Lowell Company, the bill must be dismissed.

The case against the Peninsular Company involves not only this, but other and more complicated questions. The bill does not charge the defendants specifically as contributing only to the infringement complained of, but charges that they "use or cause to be used" the infringing apparatus. Perhaps it is not necessary that the bill should make a distinction between a party directly infringing, and one who contributes to an infringement by another, but the charge

95 F.—43

that a defendant "uses or causes to be used" the offending thing is indicative of the act of which the defendant must be guilty in order to render him liable on the theory that he is a contributory infringer. It is argued that the Peninsular Company infringes in two ways: First, by furnishing current to be used in an infringing device; and, second, that it supplied a part of the system of apparatus by which the current is used. The record does not show that the Peninsular Company itself uses the current after it is delivered to the Livingston Hotel, but that the hotel proprietors use it, taking it from the Peninsular Company; nor does it show that the Peninsular Company causes the use of the current in the hotel, or does any other thing which incites the alleged infringing use than merely supplying the current. The manner of its use is indifferent to that company. There is no contract that it shall be by the employment of the Edison patents. It is fairly to be inferred that the company knows that it will be so used. The question, therefore, comes to this, whether the vendor of a thing of common merchandise, having no special adaptation to an infringing use, but is equally adapted to a lawful and proper method of use, is responsible for an unlawful method of use by the vendee, when the vendor knows that the vendee intends the unlawful method of use, but the vendor has no interest in, and makes no stipulation for, the employment of a method of use which invades the rights of another, is liable for such unlawful use. This subject has already been considered in dealing with the Lowell Company. I do not think the law of patent rights has been carried to this extent, and legal analogies everywhere else are to the contrary. In the case of the Heaton-Peninsular Button-Fastener Co. v. Eureka Specialty Co., that which the contributor furnished was especially adapted to the use which infringed, and no others; and, moreover, it was supplied for the very purpose of enabling the vendee to do that which the court held was an infringement of the patent. The drift of decision in regard to contributory infringement seems to me to be in conformity with those analogies, and to require, in order to hold one liable as a contributor, that he should have a purpose or interest reaching into the unlawful use, and that mere knowledge by the vendor of an intended unlawful use by the vendee of a common article of merchandise sold to him would not be sufficient. The owner of a water privilege who sells to a mill owner the use of so much water as will flow through a certain aperture under a given head is not a contributory infringer, though the mill owner should use the water to propel machinery covered by patents which he does not own; nor is one who under contract furnishes steam measured by horse power to a manufacturer who uses it in violation of another's patent, nor one who furnishes electrical current to move cars on a street railway wherein is embodied a patented device belonging to another. Nor would the mere fact that the seller constructed the opening and water ducts, or regulated the supply of steam to the needs of the consumer, or of the electrical current to the requirements of the railway car, render him liable; the thing supplied being necessary, and capable of, and adapted to, a lawful use. The vendee must look out that he does not with it trespass upon another's rights. It would be an intoler-

able burden upon the business of the community if the seller in every such case was bound to ascertain, at his peril, whether a valid patent right was being infringed by his vendee. It may be said that the instances mentioned come near to the line, but they lack the specific purpose to aid the infringer in doing the wrong which is essential to make the seller liable.

If this is a correct statement of the law, it must follow that this bill cannot be sustained as against the Peninsular Company upon that ground. But it appears that it supplied the transformers intervening between the generator and the house wiring, and a different question arises upon that circumstance. It is urged in behalf of the complainants that this completed the Edison system, and that the Peninsular Company became a contributor in thus making it up. On the other hand, it may be said that it is indifferent to the Peninsular Company in what machinery or by what method the current, after it leaves their lines, is used in the hotel,—whether by the Edison, the Stanley, or some other method. If it is used by some other method than the Edison method, it is not contended that the defendants' apparatus, when joined to that of the hotel, would infringe. Indeed, the contrary is substantially admitted. And the defendant the Peninsular Company in its answer insists that it is not responsible for the use made in the hotel after it has delivered the current. The leaning of my judgment is against the contention of the Peninsular Company, and that their defense upon this ground cannot be maintained. But I do not find it necessary to decide this question, for, in my opinion, there is no infringement by the proprietors of the Livingston Hotel. The validity of the complainants' patents is not disputed; nor can it be doubted that they were duly assigned to the Edison Electric Light Company, as stated in the bill. The relation of the Edison Light Company of Grand Rapids to the other complainant, and its interest in the patents, is thus set forth in the eighteenth paragraph of the bill:

"And your orators further show unto your honors that your orator Edison Light Company of Grand Rapids has had since the 31st day of December, 1886, and now has, the exclusive right and license to use apparatus embodying the said invention under said letters patent, and each of them, within the corporate limits of the city of Grand Rapids, for central-station lighting, and, with certain exceptions, for isolated lighting."

This, being interpreted, imports that on December 31, 1886, the Edison Electric Light Company granted an exclusive license to the Grand Rapids Company to use the inventions in question within the limits of the city for central-station lighting, with certain exceptions, of which it is not alleged that the Livingston Hotel was one. It not being stated that the license was for a shorter period, it is to be inferred that it was for the life of the patents. Plow Works v. Starling, 140 U. S. 184, 195, 11 Sup. Ct. 803. The court is required to deal with the case as it is presented by the pleadings. Some of the argument of counsel for the complainant is based upon the license as it appears in the testimony, and it is claimed from that that the license was more restricted than from the allegations of the bill it would appear to be. This instrument was competent and admissible

to prove the grant of the license from the Edison Light Company to the Grand Rapids Company, stated in the bill, but it did not have the effect to enlarge or alter the issues made by the pleadings or change their due construction. The decree rests upon the pleadings, and must follow them. This is the well-settled rule in equity pleading and practice. Carneal v. Banks, 10 Wheat. 181; Foster v. Goddard, 1 Black, 506–518; Agawam v. Jordan, 7 Wall. 607; Phelps v. Elliott, 35 Fed. 455–461; Jennison, Ch. Prac. 21, and note, 40–190.

In order to ascertain what were the rights and powers of the Grand Rapids Company under the license, it is necessary to take into view the position and objects of the parties. The extract from the brief of counsel for complainants, already made, frankly exhibits these matters in part. In another part of the brief it is further said:

"The complainant Edison Electric Light Company has from the time of its organization, in 1886, conducted its operations upon a definite business scheme. That scheme was to hold and retain the title to all patents acquired by it, and including the patents here in suit, and to provide for the employment of the inventions so patented by a single central-station company in each municipality of such size as to warrant the operation of such a subconcern. This business scheme, contemplated from the start, has been carried out from Maine to California, and from the Great Lakes to the Gulf. In each important municipality will be found an Edison Lighting Company, and having substantially the same rights under the Edison Electric Light Company's patents. All of these local or subcompanies, for their use of the inventions covered by the complainant Edison Electric Light Company's patents, have paid to the latter concern a royalty consideration."

The Edison Light Company of Grand Rapids was organized to supply electrical current to others. By its charter, that was its business. It was not a manufacturer. If it engaged in putting in apparatus, as it probably was expected it would, that was an incident to its proper business, and made necessary by the peculiar circumstances. It was intended that it would license others to use the apparatus, by which its product would be made available to the public, and the apparatus intended was the Edison Company's system. Without that, the Grand Rapids Company's license was of no value.

Nobody contemplated that the consumers would be required to obtain an express license from either company, either to make or use the apparatus. If the circumstances indicate such an intention, a license to use implies a license to make the thing to be used. Stone Cutter Co. v. Shortsleeves, 16 Blatchf. 381, Fed. Cas. No. 13,334; Woodworth v. Curtis, 2 Woodb. & M. 524, Fed. Cas. No. 18,013; Montross v. Mabie, 30 Fed. 234; Oliver v. Chemical Works, 109 U. S. 75, 3 Sup. Ct. 61. In the present case the circumstances clearly indicate that this was the intention, and the subsequent conduct of the parties confirms the implication. The first trace of any question of the authority of consumers to make the apparatus they were to use is found in the position taken in behalf of the complainants in the pending case. It would not be going far wrong, as I think, to treat the Grand Rapids Company as a creature of the Edison Electric Light Company, organized for its own purposes, and a mere agency for transacting its business at Grand Rapids. If this be so, there is little merit in the strenuous attempt to repudiate its authority to grant a license to its customers; for it was a consideration given in

the business of its principal. What that business was is not clearly defined. But it is unnecessary to dwell upon this aspect of the case; for, if we treat the companies as standing at arms' length and as parties to the license contract only, I think that a sufficient authority for the granting of the license to make and use the requisite apparatus.

When the Edison Electric Light Company granted its exclusive license to the Grand Rapids Company, it took its royalty for the making and using of all apparatus which it was expected and intended that the licensee should make, or cause or permit to be made, for using the inventions specified. In turn, the licensee received its royalty from its customer when it caused the construction of the apparatus in the hotel at the cost of the customer, and secured the contract for furnishing the current. In this instance, the licensee itself furnished the material and constructed that portion of the work which embodied the essence of the "Edison three-wire system," in the hotel. This it did under contract, and received $544 in payment therefor. That sum was the actual cost of the material and construction. Much stress is laid upon this latter fact, and it is contended that no consideration was received by the Edison Light Company of Grand Rapids for putting in the works, and therefore nothing to support a license; and from this it is further argued that it cannot be supposed that the company intended that any license accompanied the construction and sale of the apparatus. But it is incorrect to say there was no consideration. The contract for putting in the works was parcel of an entire transaction, which also included a contract for taking electrical current for use in the hotel, and the benefit of that contract constituted the consideration for putting in the works. The company did not give its time and attention to the matter as a gratuity. The owners of the hotel invested their money to the amount above stated in the apparatus. It became their own property, and a fixture in the hotel. It was of little or no value for removal elsewhere. It would seem that the same result would follow if the owners of the hotel had caused the works to be put in by some one else with the sanction of the company. But it is argued that, if a license to use this apparatus passed with the making and installing it in the hotel, it was merely for use while the hotel continued to take its current from the company which put it in.

This contention is based upon the suggestion that it is altogether improbable that the electric company of Grand Rapids would have consented that the license to use should endure beyond the time during which it would supply current to the hotel. There is some weight in this suggestion, but it is more than counterbalanced by opposing considerations. The contract for the supply of current was for no definite period. There is the same improbability that the owners of the hotel would have incurred this very considerable expense for the accommodation of a contract which might be put to an end at any time. The company might advance its price, and the owners of the hotel would be at the mercy of the company. The only alternative would be the discontinuance of the system which had been installed, or the incurring of considerable expense in con-

verting it into another apparatus, and acquiring other patent rights. The fact that the material may be of use in the organization of a new structure is of little or no weight. The same thing has been true in many of the cases wherein a license to use has been implied from the contract of the parties. Besides, a license to use a thing which one is authorized to make, in the absence of controlling circumstances, imports a license to use it during the life of the patent. If any restriction was intended, it is reasonable to suppose it would have been stipulated for at the time. The proof is clear that no such restriction was imposed. One of the owners of the hotel testifies that he had charge of the making of the contract, and that nothing was said by way of limitation of the use in respect to time. His testimony is keenly criticised by counsel for complainants. There is, however, not only an absence of contradictory testimony upon the subject, but Mr. McCoy, who was called as a witness for complainants, and who states that he has been the president and managing officer of the Edison Light Company of Grand Rapids from its organization, testified that nothing was said when the contract was made in regard to the duration of the use. The following is an extract from his testimony as exhibited by the record:

"Q. State whether or not it was within the contemplation of your company, or the purpose of your company, that the wiring which you installed in the Livingston Hotel should be used for any other purpose than the service of current on the Edison system. Mr. More: I object to that as incompetent, as the witness cannot testify to the intentions and purposes in contemplation of the complainant company. A. No. Q. Between yourself, or yourself acting for your company, and the proprietors of the Livingston, was there any arrangement on that subject? A. At that time there was no other system of properly lighting, so the question could not arise. No other system had been developed at that time. The recent systems have come in since."

And there is no doubt that this was the fact. The Edison Company at Grand Rapids had not long before organized for the purpose of exploiting the Edison patents, and supposed them to fill the field. No rival had appeared, and no doubt the parties believed that for a long time the company would maintain its position, and continue to supply its customers. In a great measure this expectation has been realized, though probably the rivals have come sooner than expected. But we are to interpret the contract in the light of circumstances then existing, and not by events which have subsequently transpired.

Again, it is urged that the works installed in the hotel constitute only one element of the claims in the complainants' patents, and that a license to use must be of the whole invention. But the proposition is not sound. It is enough if the thing sold, or authorized to be sold, by the patentee is so far of the essence of the invention that its value is lost or seriously impaired if the vendee cannot use the other parts of it. The vendor must be held to have intended that the other parts, which are incident and necessary to its use in order to give it value, will also be used. No doubt, where the article is adapted to, and valuable for, other and independent use, as in the case of the sale of the prism (Roosevelt v. Electric Co., 20 Fed. 724, cited by the complainants' counsel), a different rule would prevail. In that case Judge Wallace said:

"Where the article is of such peculiar characteristics that it cannot be dealt in as a trade commodity, and cannot be used practically at all, unless as a part of another patented article of the vendors, it would be preposterous to suppose that the parties did not contemplate its use in that way."

The distinction is clear enough. The peculiar and distinguishing characteristic of the first of the Edison patents in suit, which is rightly termed his basic patent, was the employment in the house-wiring apparatus of a compensating conductor, running between two outer wires connected with the positive and negative poles of the generator, respectively; the compensating conductor having offsets running from each side to the side wires, respectively, on each of which offsets an arc was formed at the location of the lamp. By means of the transformers, a division of the electrical energy borne by the main wires was effected, and by means of the three-wire system the division was continued, and each lamp was rendered independently controllable. The advantage of this arrangement consisted in equalizing and relieving the tension of the current on the wires, which under certain circumstances becomes excessive, and thus overheating is prevented. This device gives the name to what is called in the record the "Edison three-wire system." Of this patent, Mr. Jenks, the complainants' expert witness, says:

"It describes and claims what has become to be known, from the form in which the invention has usually been embodied and introduced, as the 'three-wire system.' This patent is the fundamental or underlying disclosure covering this compensating system of distribution from a divided source of electrical energy, and several patents have been granted for improvements thereon, at dates subsequent to that of this original patent, one of these subsequent patents being the second Edison patent here in suit, No. 287,516."

The second patent covers an invention which consists in the interposition, at a point on the lines leading from the generator to the apparatus immediately concerned in the production of light, of transformers, whose function it is to reduce the voltage or tension on the lines leading to them, which is many times greater than can be used on the lighting apparatus, to a moderate voltage, such as can conveniently be employed at the latter point. This rendered less wiring necessary on the main lines, and it also assisted in regulating the flow of current to the lamps. The latter invention is an improvement of the former. In both, the essential feature was the construction of the regulating devices in the illuminating apparatus, speaking with reference to its service in lighting. Other elements, such as generators, transformers, and lamps, were not new, and were incidents to the main feature.

In accordance with controlling rules of law, it must be held that the sale and construction, as fixtures in the hotel building, of the apparatus embodying the substance of the invention, carried with it the right to use the subsidiary and co-operating elements, which was, in the contemplation of the parties, necessary to make the former useful.

A further contention of counsel for complainants is that the method employed by the Edison Light Company of Grand Rapids involved only the elements of the first patent, and did not involve the invention covered by the second,—that is, did not involve the employment

óf the transformers,—and therefore the license implied did not authorize the use of the later invention. If the fact was as assumed, I should incline to the opinion that the result contended for would follow; but I am satisfied that the fact was otherwise. The evidence upon this point is obscure, but such as there is, taken with the reasonable inferences from undoubted facts, leads to the conclusion that in all probability the original construction included the transformers as well as other elements of the Edison patents. The Grand Rapids Company's license covered both patents, and the use of the transformers was advantageous to itself, by rendering its service more economical, as well as to the owners of the hotel. The hotel was a comparatively large structure, using about 500 lights, and the requirements of an apparatus for that place as nearly perfect as was practicable were evident. And no reason is perceived why the transformers should not have been used. Besides, the complainants are in the electrical business. They put in the works because they were experts. They must have the means of knowing whether transformers were employed in the original construction or not, and, if not, they should have the means of proving that they were not. The other parties to the contract were not experts, the business was new to them, and they would be unlikely to know what the details of construction were. The complainants are therefore subject to the presumption applicable to such circumstances. When the Edison Light Company of Grand Rapids ceased to supply current to the hotel, they removed their own part of the apparatus. Hence the fact that, when the Peninsular Company began to furnish the current to the hotel, it put in the Stanley transformers, has no significance, as tending to show that the former company did not also use their transformers.

Complainants·claim also that importance should be attached to the fact that the hotel owners in 1894 made a modification of the house wiring, so as to convert it into the "two-phase three-wire construction" of the Stanley system, which they used for part of that year, and that this demonstrates that the house wiring is susceptible of a noninfringing use. But there are two answers to this. In the first place, it has no tendency to show what the intention of the parties or the legal effect of their contract in 1888, made while the art was in its infancy, was; and, secondly, the experiment was not successful, and it was found necessary to take out the modification, and revert to the Edison system. The Stanley system cast too great a load upon the central wire, and overheated it. It appears that the transformers, introduced into the apparatus in 1896, when the Peninsular Company commenced to supply current, were not the transformers of the second Edison patent, but were the transformers of the Stanley system. What the effect of that would be upon the question of infringement would depend upon the scope of the second Edison patent, and a comparison of the transformers of the two systems, if the Edison patent is not broad enough to cover any kind of transformer. But, as I reach the conclusion that the bill cannot be maintained for other reasons, it is unnecessary to pursue that inquiry.

Since the case was submitted a stipulation of counsel for the parties has been filed, whereby the controversy is limited to the question

whether the second claim of the second patent, which fully characterizes that invention, is infringed. But this has not relieved the court from the duty of considering the former patent, since both are involved in the questions in regard to the interpretation and effect of the contract and action of the parties when the apparatus which is charged as offending was originally installed in its present situation. The result is that the bill must also be dismissed as against the Peninsular Light, Power & Heat Company. A decree will be entered in conformity with these conclusions.