THOMSON-HOUSTON ELECTRIC CO. v. ILLINOIS TELEPHONE CONSTRUCTION CO. et al.

(Circuit Court of Appeals, Seventh Circuit. January 11, 1907.)

No. 1,321.

PATENTS—INFRINGEMENT—ESTOPPEL BY IMPLIED LICENSE.

> The sale of electric engines, which could only be used by the purchaser in connection with a trolley switch or device covered by a patent owned by the seller, without any restriction in the contract, carried with it an implied license to use such device, not only with the engines so sold, but as well with others bought from other makers, and the seller cannot claim such use to be an infringement; nor is it material that it usually restricted the right to a use in connection with its own engines or cars, where no notice of such custom was given to the purchaser.

Appeal from the Circuit Court of the United States for the Eastern Division of the Northern District of Illinois.

For opinion below, see 143 Fed. 534.

The appeal is from a final decree of the court below, dismissing the bill brought by the appellant against the appellees for the infringement of letters patent No. 424,695, issued April 1st, 1890, to Charles J. Van Depoele, for improvements in suspended switches and traveling contacts for electric railways.

The further facts necessary to the determination of the case, are stated in the opinion.

L. F. H. Betts and Edward Rector, for appellant.

Thos. F. Sheridan and Nathaniel C. Sears, for appellees.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

GROSSCUP, Circuit Judge, delivered the opinion.

Appellant, assignee of the patent in suit, was the nominal complainant in the court below—the real party in interest being the General Electric Company, successor to the Edison General Electric Company, that in 1892 united in interest with the appellant.

Appellees defended in the court below on the several grounds, that in view of the prior art, the claims of the patent sued upon were in-

valid; that in view of certain earlier patents then expired (Nos. 393,-278 and 397,451) the patent in suit was an attempt at double patenting; that the specific structures used by appellees are described and claimed in these two earlier patents; and that by reason of the purchase, by the Illinois Telephone Construction Company, of the General Electric Company, the owner and exclusive licensee of said patent, of certain electrical locomotives which can be used only in connection with the devices complained of (such purchase having been made with the knowledge, upon the part of the General Electric Company, that the locomotives could not be used except in such connection) appellant is estopped from questioning the right of appellees to make use of the devices in controversy, for the purpose of operating, not only the electric locomotives thus purchased of the General Electric Company, but of its other locomotives, purchased from other manufacturers.

In the view we take of the defense last named, it is unnecessary to consider the questions raised by the other defenses. The patent in suit relates to electric railways of the class in which a suspended conductor is used to convey the working current—the invention consisting in certain devices, and their relative arrangement, by means of which a contact device carried by a rod or pole extending from the car, and pressed upwardly into contact with the conductor, is automatically switched from one line to another, correspondingly with the switching of the car. The appellees operate, in tunnels under the streets of the city of Chicago, cars moved by electric locomotives of the class named—locomotives that would be entirely useless (unless the trolleys were switched by hand) except for the switching parts and crossing frogs that constitute the devices said to be covered by the patent in suit.

Sometime between December, 1903, and May, 1904, the Illinois Telephone Construction Company purchased of the General Electric Company, twenty-two electric locomotives, to be operated in connection with the trolley switching device covered by the patent, for which the General Electric Company was paid thirty-five thousand dollars, which locomotives were duly installed and put into operation under the following circumstances: The first system of electrical railways installed was known as the Morgan Third Rail Gear and Electric System. While this system was on trial, the tunnel company people were told by an employé of the General Electric Company, that the General Electric Company were in a position to furnish overhead trolley electric locomotives that would be practical for operation; but upon the delivery of one of these locomotives, the discovery was made that there was no practical overhead switch. After conferences with the engineers of the General Electric Company, the engineer of the tunnel company, a series of experiments having been made, hit upon a practical design from which the switches now in use, said to be the infringing devices, were manufactured and installed—the engineers of the General Electric Company being present at different times during the experimentation necessary to arrive at a switch that would make practicable the operation of the locomotives thus purchased. The switches themselves were made and installed by J. J. Ryan & Co. Without doubt, this purchase of locomotives licensed the Tunnel Com-

pany to use the switching devices without which the locomotives could not be automatically operated. Such is the doctrine of the cases— Edison Electric Light Company v. Peninsular Light, Power and Heat Company (C. C.) 95 Fed. 678; affirmed on appeal 101 Fed. 836, 43 C. C. A. 479, wherein it was said:

"But there may be circumstances under which the sale by a patentee of one patented article will carry with it the right to use another in co-operation with the first, although the thing be covered by a second patent. Thus, if the article sold be of such peculiar construction as that it is of no practical use unless it be used in combination with some subordinate part covered by another patent of the vendor, the right to use the latter in co-operation with the former might be implied from circumstances. It is a general principle of law that a grant necessarily carries with it that without which the thing granted cannot be enjoyed. The limitation upon this is that the things which pass by implication only must be incident to the grant, and directly necessary to the enjoyment of the thing granted. The foundation of the maxim lies in the presumption that the grantor intended to make his grant enjoyable. This presumption has been employed in the construction of licenses granted by patentees, as in other branches of the law."

And such practically is the admission of appellant's counsel in the oral argument of this cause.

But prior, and subsequent, to the purchase of these locomotives of the General Electric Company, the Illinois Tunnel Company purchased other locomotives, the larger part from the Jeffery Manufacturing Company—locomotives that the company is now operating in connection with these trolley switching devices, and that could not be operated automatically but for these devices; and it is to restrain the operation of these other locomotives in connection with these trolley switching devices that this suit is urged; the contention being that the switching devices are within the patent in suit, and that appellant habitually places upon the use of such switches the restriction, that they shall be used only in connection with appellant's locomotives and equipment.

That appellant habitually imposes this restriction, in the sale of the switching devices covered by the patent in suit, may be true; but there is nothing in the record showing that notice of that fact was brought to the appellees. And, as a matter of fact, at the time of the purchase of the locomotives of appellant, appellant knew that at least one locomotive, not purchased of appellant, was adjusted in its trolley connections to the trolley switching devices said to be covered by the patent in suit; so that whether the restriction in question would have been one that would have been enforceable or not, in case the appellees and appellant had consciously entered into it, as a part of a transaction in which appellee was purchasing trolley switching apparatus of appellant, it cannot be said to be a restriction applicable to the circumstances of this case; for appellee having, so far as this record discloses, no notice of the restriction, and not having, so far as this record discloses, dealt for the purchase of the locomotives with such restriction in mind, the license that the law raises upon the transactions between the parties is as broad as if no such restriction usually entered into the dealings of appellant with the purchasing world. The sole transaction disclosed here is the sale of thirty-five thousand dollars worth of electric locomotives, to be operated without royalty, restriction (express or implied), or further license, in connection with the trolley

switching devices already installed—a transaction, that in the very nature of the tunnel company's situation, must be held to permit the use of the same devices in connection with other locomotives, unless, though there be no stipulation to that effect, the tunnel company have no general right to operate locomotives other than those purchased of appellant; a proposition that we cannot, of course, hold.

For the reasons above stated, the Circuit Court properly dismissed the bill, and the decree appealed from is

Affirmed.