### GENERAL ELECTRIC CO. v. CONTINENTAL LAMP WORKS, Inc.
### SAME v. UNITED LAMP MANUFACTURERS' CORPORATION.

(Circuit Court of Appeals, Second Circuit. April 3, 1922.)

Nos. 255, 256.

1. Patents ⬅312(1) Defendant has burden of proving license to use patent.

A defendant, who admits the validity of the patents and his infringement, has the burden of proving he had an implied license under the circumstances, which estopped plaintiff from enjoining the infringement.

2. Patents ⬅210—Evidence held not to show implied license of lamp patents by sale of bases.

Evidence that plaintiff had sold lamp bases to defendants knowing they were infringing plaintiff's patents for tungsten-nitrogen electric lamps, *held* not to establish an implied license to use the patent, where it also appeared that the bases formed a small percentage of the cost of the finished lamp and could be used with noninfringing lamps, and that they were sold with a notice of which defendants had knowledge, that they gave no license to use the lamp patents, because defendant had been previously sued by the government on a charge of monopolizing the electric lamp business.

3. Patents ⬅212(1)—Inventor can impose any terms on licensee which do not violate other laws.

Use of an invention can only be obtained on the inventor's terms, and whatever terms he may impose will be enforced by the court, provided

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

only that the licensee is not thereby required to violate some law outside of the patent law.

**4. Patents ⬾210—Sale of element does not give implied license to use combination.**

 The sale of one element of a patented combination does not necessarily imply license to use the whole combination; but the question always is, What is a fair inference from the entire transaction?

Appeals from the District Court of the United States for the Southern District of New York.

Separate suits in equity for infringement of patent by the General Electric Company against Continental Lamp Works, Inc., and against the United Lamp Manufacturers' Corporation. From orders denying injunctions pendente lite, plaintiff appeals. Reversed, with directions to grant the injunctions.

Howson & Howson, of New York City (Frederick P. Fish, of Boston, Mass., Hubert Howson, of New York City, and Albert G. Davis, of Schnectady, N. Y., of counsel), for appellant.

Richard Eyre and W. N. Seligsberg, both of New York City, for appellees.

Before HOUGH, MANTON, and MAYER, Circuit Judges.

MANTON, Circuit Judge. The appellant is the owner of the Langmuir patent, No. 1,180,159, granted April 18, 1916, which covers a new type of incandescent lamp. It was sustained in this court in General Electric Co. v. Nitro-Tungsten Lamp Co. (C. C. A.) 266 Fed. 994. These are separate suits, one against the Continental Lamp Works, Inc., and the other against United Lamp Manufacturers' Corporation. The former was organized in February, 1920, after the decision in the District Court in the Nitro-Tungsten Case. It has since advertised the tungsten or vacuum lamps which do not infringe the patent in suit, but it has engaged in business exclusively since its organization in the manufacture of lamps of the gas-filled type, which lamps embody the invention of Langmuir, and it is claimed by the appellant to be identical with the lamps enjoined in the Nitro-Tungsten suit, and in a subsequent suit by General Electric Company v. Alpha, where the District Court again affirmed the finding that the Langmuir patent was valid.

The appellee the United Lamp Manufacturers' Corporation was organized July 29, 1921. It is said to be a consolidation of interests of companies which were not licensed to use the invention of the patent in suit. It has been engaged in selling lamps of the Langmuir type. It sells vacuum tungsten lamps and vacuum carbon lamps. A patent was issued to Just and Hanaman, which is now owned by the appellant, and which was held valid and infringed in General Electric Co. v. Laco-Philips, 233 Fed. 96, 147 C. C. A. 166. This patent was for a tungsten lamp, and was like the carbon lamp, in that it operated in a vacuum. Both of these inventions were of a high order, and recognized by judicial decision as such. Dr. Langmuir was able to produce a lamp which in large size consumed one-half a watt for each candle power which it produced. It meant one-half of the energy consumed by the

vacuum tungsten lamp and one-sixth of the energy consumed by the carbon lamp, and resulted in a great saving to the public.

On this application for an injunction pending the final hearing, the affidavits offered in defense did not plead invalidity or noninfringement of the patent; but a defense was made on the contention that the lamps were sold by the appellees lawfully because of an implied license by reason of the sale of bases. The lamp base is an appendage which is fastened permanently to the incandescent lamp before it is sold. It costs, at retail, 1 or 2 per cent. of the selling price of the lamp, and it is used as a base for the lamp of the Langmuir patent. When the appellant sold these bases, the contract of sale provided in red letters as follows:

"The sale of bases by us confers on the purchaser no license under any patents of the General Electric Company covering or relating to the structure of INCANDESCENT LAMPS, or the materials, machines, or processes used in their manufacture."

Knowledge by the appellees of this notice, so written on the terms of sale, is conceded. The defense contends that by reason of the purchase of the bases there was an implied license to use the lamps constructed under the Langmuir patent. The court below sustained the contention of the appellees, upon the theory that the bases which the appellant sold to the appellees were sold with the knowledge that these manufacturers were making the lamps under an implied license from the appellant, and that because the bases which were sold could be used only in constructing a patented article (Langmuir construction), it is presumed to be intended, both by the buyer and seller, to be used for that specific purpose, and, when appellant made a sale, it carried with it to the appellees an implied license. The bases in question were standard articles of manufacture, and were constructed under patent for many years before the Langmuir lamp was invented. It was because the appellant did not wish to license the appellees in the use of the Langmuir patent, or any other patent which had to do with incandescent lamps, that they inserted the notice in the terms of sale.

It is claimed that if the appellant sold the bases without knowledge or notice of the possibility or probability of the infringing use, no implication of license could have been raised, and the notice would have been unnecessary. But the very act by which the appellant is now charged with having waived notice seems to us to be the one means it might have employed in serving notice upon the purchaser that it would not permit the bases to be used in connection with the sale of the Langmuir lamp. The issues in both cases are alike. The lamp base is a device external to the lamp. The Langmuir patent does not show any base. It shows two wires projecting from the bulb. These wires may be connected with an electric circuit, and the lamp will burn without a base. The ordinary way, however, of making such a connection, is through a base, and this consists of a screwed shell adapted to screw into an Edison type lamp socket and a center contact fastened mechanically to the screwed shell, but electrically insulated from it. The screwed shell of the lamp socket is connected to one of the terminals of the electric circuit. The lamp socket contains a center contact,

which is connected with the other terminal of the electric circuit, and it is adapted to connect with the center contact of the base. Two styles of bases are used on the infringing lamps, to wit, the "standard medium" and the "mogul." It appears that the base is merely a means of supporting the lamp and carrying current to it. The standard medium base is used by all parties for the various types of lamps, patented and unpatented. It is used for the carbon lamp, which was covered by patents which have now expired. It is also used in the manufacture of attachment plugs, which are devices attached to lamp cords and screwed into lamp sockets, in order to connect in circuit electric fans and similar devices. The mogul base was one time restricted to the carbon lamps, and has been used on both carbon and tungsten, whether or not embodying the invention of the Langmuir patent. It is used on certain vacuum tungsten lamps and employed in series circuits. It is not restricted to gas-filled lamps, as contended for by appellees. It also appears that the standard medium bases sell at from $5.50 to $6.50 a thousand, and the mogul at $26 a thousand, while the gas-filled lamps with the standard medium bases list at from 65 cents to $2.60 each. The gas-filled lamps with the mogul base are listed at from $3.15 to $9 each. It thus appears that the value of the base is small compared with the value of the lamps, and indicates the improbability of the appellant wishing to license the manufacture of the patented lamp from the mere sale of the base.

It is admitted by the appellant that it continued to sell the bases to the appellee Continental Lamp Works, Inc., after it knew or had reason to believe that it was using these bases in the manufacture of lamps infringing the Langmuir patent. Its claim is that in making such sales it was not granting a license under the lamp patents, and felt that it had good reason for this business conduct. The claim is that in 1911 the government filed a bill against the appellant, complaining of certain practices which it said created a monopoly, in violation of the federal statutes, in relation to its manufacture of incandescent lamps. It was claimed that the appellant, by controlling the commercial source of supply of useful or necessary parts of the lamp, were attempting to control the lamp business, including the business in vacuum carbon lamps. It also complained that the appellant had entered into unlawful contracts with the only base manufacturer in the United States, to wit, the Providence Gas Burner Company, which was made a defendant in the suit. As a result of all this, the independent lamp companies were compelled to pay excessive and unfair prices for the bases, and thus were placed at an unlawful disadvantage as competitors. A decree was entered in the government suit, which required the appellant openly to take over its lamp subsidiaries, and enjoined it from utilizing any patents as a means of controlling the manufacture or sale of any type or types of lamps not protected by lawful patents, such as the carbon lamp, or the tungsten lamp, the patents on which had not yet been issued.

Under this decree the General Electric Company took over the factory of the Providence Gas Burner Company and made it the Providence Gasworks of the General Electric Company. It thereafter carried

on the base business in its own name. The company was thereupon obliged to decide upon a business policy. It appears that about one-half of the lamps which were made in the country were vacuum tungsten lamps, which would be covered by the Just and Hanaman patent, which was soon to issue to the appellant. The Langmuir patent did not exist commercially at the time. The General Electric Company owned some other patents, covering bases and covering the machines by which they were manufactured. It thus had to decide whether it should or should not sell the bases to other lamp manufacturers, including those manufacturers who were making tungsten lamps. Tungsten lamps were then unpatented, because the patents had not been issued, and the carbon lamps were unpatented and never could be patented, because patents which covered them had expired years before. Whether or not this business policy was required, either by the decree or by good business, it afforded sufficient ground for the present claim of good faith in the sale by the appellant, and its present position that it did not intend, by sales of bases, to license the sale of lamps under the Langmuir patent. It also showed justification for incorporating in the terms of sale the red-lettered notation above referred to. It justified the Base Works Company selling over the counter without inquiry as to what use was to be made of the base. The appellant had a right to rely on its monopoly granted by the issuance of the patents for its lamp under Langmuir. It also appears that after granting the patents, the appellant has prosecuted suits for infringement, and has shown a clear desire to establish the validity of its patent. The bases sold to the appellees could be used for other purposes than using with them the lamp which was protected to the appellant by the patents.

[1] The burden was upon the appellees to establish that the parties agreed, by a meeting of the minds, that the licenses contended for should be granted, or that when the bases were purchased, the parties understood, and the appellees had adequate reason to assume, that they had received an implied license under the circumstances, which estopped the appellant from denying that such was the intention of the parties at the time of the transaction. The appellant's affidavits show that the appellees knew of this situation, that they knew about appellant's practice in selling bases, and that they knew the patents in suit were in process of being sustained in litigation, and were subsequently enforced.

[2] The affiants show that this was known to the trade, and in the answering affidavits there is no claim that, at the time when the bases were bought, the appellees understood they were getting a license under the lamp patents. There is no intimation or suggestion that, when the appellees purchased these lamps, they were obtaining a license under the lamp patents, and it also appears that they knew of the red ink notice. The claim is simply that they were encouraged by the conservative and moderate manner in which the appellant dealt with its patents, and believed that they would never suffer loss, and that they were encouraged because the bases were so easily obtainable from the appellant. Nowhere is it shown that by written or spoken word was an implied license granted, and, on the contrary, we think the conduct of the

appellant shows that they were not granting licenses; on the contrary, they instituted suits for infringement against infringing tungsten lamp makers, who were buying bases from the appellant and using the patented lamp. We think there was nothing in the sale of these bases which justified the claim of estoppel against the appellant enforcing its rights against infringers.

[3] Use of an invention can only be obtained on the inventor's terms. Without paying or doing whatever he exacts, no one can be exempt from his right to exclude, and, whatever the terms, the courts will enforce them, provided only that the licensee is not thereby required to violate some law outside of the patent law. Rubber Tire Wheel Co. v. Milwaukee Rubber Works Co., 154 Fed. 358, 83 C. C. A. 336. In United Nickel Co. v. California Works (C. C.) 25 Fed. 475, it was said:

"The selling of the solution does not authorize, inferentially or otherwise, the use of it for the purpose of nickel-plating, whatever else it may be used for, without also procuring a license to nickel-plate under the first and fourth claims, which are separate inventions."

[4] So, where the owner of a patent sells a patented article subject to a restriction, the purchasers, with notice of this limitation, could acquire no better right than strangers to infringe upon that part or claim of the monopoly still secured to the patentee. Dickerson v. Tinling, 84 Fed. 192, 28 C. C. A. 139. The sale of an element of a patented combination does not necessarily imply license to use the whole combination. There is always a question of what is a fair inference from the transaction. Leeds & Catlin Co. v. Victor Talking Machine Co., 213 U. S. 325, 29 Sup. Ct. 503, 53 L. Ed. 816; Amer. Graphophone Co. v. Amet (C. C.) 74 Fed. 789. In Edison Electric Co. v. Peninsular Light Co., 101 Fed. 831, 43 C. C. A. 479, Judge Lurton pointed out that there may be circumstances under which the sale of a patented article by the patentee will carry with it the right to use another in co-operation with the first, although the thing be covered by a second patent, such as where an article of a peculiar construction is sold which has no practical use, unless it be used in combination with some subordinate part covered by the patent of the vendor and their right to use the latter in co-operation with the former might be implied under the circumstances. In 101 Fed. at page 836, 43 C. C. A. 479, 484, Judge Lurton said:

"The limitations upon this is that the things which pass by implication only must be incident to the grant, and directly necessary to the enjoyment of the thing granted. The foundation of the maxim lies in the presumption that the grantor intended to make his grant enjoyable. * * * It is evident that the extent of an implied license must depend upon the peculiar facts of each case. The question in each case is whether or not the circumstances are such as to estop the vendor from asserting infringement."

We accept this statement of the law, and with it as a guide we think the parties here did not intend that an implied license be granted. The mere sale imports no license, except where the circumstances plainly indicate that it did, or except where good faith required it, or where it cannot be doubted that the vendee understood that they were getting a license. We are convinced that, in view of what was written in the terms of sale, there was no justification for the vendee's being thus

persuaded. Natl. Cash Register v. Grobet, 153 Fed. 905, 82 C. C. A. 651; Thomson Co. v. Ill. Tel. Const. Co., 152 Fed. 631, 81 C. C. A. 473; Montross v. Mabie (C. C.) 30 Fed. 234. We find nothing in the conduct or language which would justify the appellees to be led to any course of conduct justifying their use of the patented lamp in connection with these bases. The bases were capable of noninfringing uses, and the notice on its face was intended to warn against the use by infringement of the patent in suit.

Orders reversed, with directions to grant the injunction pendente lite as prayed for.