**Earl A. OSTER, Plaintiff,**

v.

**GRANT–SOUTHERN IRON & METAL COMPANY, a corporation, Defendant.**

**Civ. A. No. 38273.**

United States District Court, E. D. Michigan, S. D.

March 11, 1974.

Arthur Raisch, Detroit, Mich., for plaintiff.

Bernard J. Cantor, Robert Alpern, Detroit, Mich., for defendant.

## OPINION AND ORDER

GUBOW, District Judge.

This is an action for patent infringement in which Plaintiff is seeking injunctive relief and damages. Jurisdiction is based on United States patent law, particularly 35 U.S.C. § 271 and 281 and 28 U.S.C. § 1338. The Defendant has moved for summary judgment pursuant to Rule 56(c), Federal Rules of Civil Procedure, Title 28 U.S.C.

The following chain of events lead to the parties in this action:

Plaintiff Earl A. Oster invented a process for fragmentizing metal. He obtained a patent for this process. It should be noted that the patent covers the process rather than machines capable of performing the process. The patented process is one in which the metal is fragmentized for subsequent separation by magnetic means.

Plaintiff sold his patent rights to a company called Wyandotte Steel Corporation (Wyandotte) in exchange for: (a) a royalty on Wyandotte's sales of scrap processed by the patented method, and (b) a Five Thousand Dollar ($5,000.00) royalty payment for each machine sold by Wyandotte to others. Wyandotte assigned its rights under this agreement to a company called Environ, Inc. (Environ). Environ acquired and operated four machines which perform the patented process (as well as certain non-patented processes) and paid royalties to Plaintiff pursuant to the agreement.

Subsequently, Environ sold the four machines to a wholly-owned subsidiary of Defendant, Grant-Southern Iron & Metal Company. Later, it sold the patent back to Plaintiff. The purchaser of the four machines included several former minority stockholders of Environ.

The agreement between the purchaser of the machines and Environ is central to the dispute now before the court. (See exhibit F, attached to Defendant's motion). The agreement characterized the subject of the transaction as "all tangible personal property owned by Environ." Under the agreement, *inter alia,* Environ indemnified the purchaser from liability which may be imposed on the purchaser by reason of:

(3) Allegations based upon the sale by Environ of its scrap inventory and the four metal fragmentizing machines to Purchaser hereunder regardless of the use or disposition of such machines or when such use of disposition is made; but not allegations based upon claims of operating royalties by reason of the operation or sale

of the four metal fragmentizing machines by Purchaser or its successors in interest subsequent to the date hereof.

The Plaintiff claims that Defendant's use of the machines to fragmentize metal for magnetic separation is a patent infringement. Because the patented process calls for magnetic separation subsequent to fragmentation, Plaintiff apparently would not object to Defendant's use of the machine simply for fragmentizing metal other than for subsequent magnetic separation. As a practical matter, however, this would greatly limit the benefit of the machines to Defendant.

Defendant argues, first, that the sale of the machinery was unrestricted. Defendant contends that Environ acquired authority to sell the machine without restriction as assignee of the agreement between Plaintiff and Wyandotte. That agreement had transferred all rights in the patented process to Wyandotte and contemplated the sale of machinery by Wyandotte to practice the patented process subject only to the payment by Wyandotte of royalties to Plaintiff.

It is also argued that the sales agreement between Environ and Defendant's subsidiary contemplated unrestricted use of the machinery by the purchaser. Defendant points to the absence of any express restrictions in the agreement, as well as to language referring to the purchaser's "use" and "operation" of the machinery. Defendant also relies on language in the Oster-Wyandotte agreement which allegedly shows that the sale of the machinery for the patented process was both contemplated and expressly licensed:

> Article 2, pp. 3–4: 'Wyandotte shall pay royalties to Oster at the rates set forth hereinafter for the use by Wyandotte, *and for the use by any purchaser* . . . from Wyandotte of an Oster machine, of any process covered . . . by any claim of an unexpired patent . . . royalty

shall be payable hereunder at the following rates:

> (a) 3.33% of the net sales price received by Wyandotte for all non-ferrous metals sold by Wyandotte which are processed by Wyandotte using any patented process, and

> 1.33% of the net sales price received by Wyandotte for all ferrous metals sold by Wyandotte which are processed by Wyandotte using any patented process, and

> (b) $5,000 for each Oster machine sold . . . to another by Wyandotte to practice any patented process;'

Finally, Defendant argues that subparagraph (b) of the above-quoted passage constitutes an express license by Oster to Defendant to practice the patented process. This argument, raised for the first time in the third brief in support of the motion, is premised on Defendant's rights as a third party beneficiary of the Oster-Wyandotte agreement under Michigan's third party beneficiary statute, M.C.L.A. § 600.1405.

In opposition to the motion, Plaintiff argues that there exists a genuine issue of material fact rendering summary judgment inappropriate. Plaintiff, speaking of Defendant's possible unrestricted right to practice the patented process as being an "implied license", argues that the question of whether Defendant acquired such a right is a factual question which cannot be resolved from the pleadings. Plaintiff points to the following facts supporting his contention that no such implied license existed here. First, the sales agreement between Environ and Defendant's subsidiary covered only "tangible personal property". Plaintiff points out that the patent is not tangible personal property and argues that this language can be read as a restriction on the sale especially because the purchaser included minority stockholders in Environ who knew about the patent. Secondly, Defendant was allegedly offered a license to practice the patented process at the

time of the sale of the machinery, but declined to accept. This allegation is supported by the affidavit of D. T. Axon, Chairman of the Board of Environ. Finally, Plaintiff alleges that Environ's indemnification agreement evidences Defendant's awareness that use of the machines would constitute a patent infringement. The indemnity did not extend to allegations based on claims of operating royalties by reason of the operation of the machines.

 With respect, first, to Defendant's argument based on Michigan's third party beneficiary statute, it is noted that the statute confers rights only on "[a]ny person for whose benefit a promise is made by way of contract." M.C.L.A. § 600.1405. A contract creating a royalty obligation on a party who sells a machine to a purchaser can hardly be regarded as a promise for the purchaser's benefit. Defendant's contention to the contrary is without merit.

With respect to the question of an implied license, the United States Court of Appeals for the Sixth Circuit has stated: "It is evident that the extent of an implied license must depend upon the peculiar facts of each case. The question in each case is whether or not the circumstances are such as to estop the vendor from asserting infringement." Edison Electric Light Co., v. Peninsular Light, Power, and Heat Co., 101 F. 831, 836 (6th Cir. 1900). To the same effect, it has been held that a "mere sale imports no license except where the circumstances plainly indicate that it did, or except where good faith required it, or where it cannot be doubted that the vendee understood that they were getting a license. General Electric Co. v. Continental Lamp Works, Inc., 280 F. 846, 851 (2nd Cir. 1922); see also Hunt v. Armour & Co., 185 F.2d 722 (7th Cir. 1950).

In the case of the sale of a machine capable of use in unpatented ways as well as the patented way, no presumption of license to practice the pat-

ent is created. Popsicle Corporation v. Weiss, 40 F.2d 301 (S.D.N.Y.1929).

Viewed in the light most favorable to Plaintiff, the evidence in this case does not suggest that Defendant undoubtedly understood it was getting a license from the transaction with Environ or that good faith required that it obtain such a license, or that the circumstances plainly indicated that such a license was being conveyed. In short, it cannot be said that there are no genuine issues of material fact remaining on these questions. Summary judgment is therefore not appropriate.

For the foregoing reasons, the Defendant's motion for summary judgment is hereby denied.

It is so ordered.